**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LASHAWN DAWSON, on behalf of himself and all others similarly situated,<br><br>        *Plaintiff*,<br><br>   v.<br><br>3 DAY BLINDS, LLC,<br><br>        *Defendant.* | <u>**ECF FILING**</u><br>Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT &**<br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff LASHAWN DAWSON, on behalf of himself and all others similarly situated (jointly, "Plaintiff"), by and through his undersigned counsel, as and for their putative Class Action complaint against Defendant, 3 DAY BLINDS, LLC ("Defendant") in the above-captioned matter hereby alleges the following:

<u>**INTRODUCTION**</u>

1.  Plaintiff, LASHAWN DAWSON ("Plaintiff" and/or "Dawson") on behalf of himself and others similarly situated, asserts the following claims against Defendant, 3 DAY BLINDS, LLC, ("Defendant") as follows.

2.  Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using the computer. Plaintiff uses the terms "blind" or "visually impaired" as Mr. Dawson's central visual acuity with correction is less than or equal to 20/200.

3.  Defendant, 3 DAY BLINDS, LLC, provides the public with a wide range of goods, products and services related to their manufacturing of various window treatments and information concerning their Company via their online platform https://www.3dayblinds.com. However, Defendant's Website contains numerous access

barriers that make it difficult if not impossible for blind and visually impaired customers to effectively use such Website. In fact, these access barriers make it impossible for blind and visually impaired users to locate even one of Defendant's 250, 3 DAY BLINDS LLC "In-home Design Consultants" near their residence. Thus, Defendant excludes the blind and visually impaired from the full and equal participation in the growing internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually impaired individuals to access a variety of services fully and independently.

4.      Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired [1], including 2.0 million who are blind. According a 2016 report published by the National Federation of the Blind's 2016 report, approximately 418,500 visually impaired persons live in the State of New York.[2]

5.      Plaintiff, LASHAWN DAWSON, brings this civil rights action against Defendant 3 DAY BLINDS LLC, for their failure to design, construct, maintain, and operate  https://www.3dayblinds.com   (the "Website"), to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, and therefore the denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA"). In fact, the blind has even a greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility.

---

[1] *See* United States Census Bureau Report.
[2] *See* 2016 Report – National Federation for the Blind.

6.      Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7.      Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*, and 28 U.S.C. § 1332.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Plaintiff's New York State Human Rights Law; N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C., Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

9.      Venue is proper within this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant

amount of business in this District. Defendant is subject to personal jurisdiction in this District in that a substantial portion of the conduct complained of herein occurred in this District as a result of Plaintiffs attempt to utilize, on several occasions, the subject Website within his residence located within this Judicial District.

10.     Defendant, 3 DAY BLINDS, LLC, a California Limited Liability Corporation, clearly participates in New York's economic life by performing business over the Internet through its interactive Website https://www.3dayblinds.com, which offers its products, services and otherwise distributes its products throughout the United States, including New York customers residing within this Judicial District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury and violated the rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. Plaintiff has been denied the full use and enjoyment of the goods and services offered to the general public on Defendant's Website in Bronx County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future. Most courts support the placement of Venue within the district in which a Plaintiff tried and failed to access a Website. [3]

---

[3]   See, e.g., *Chloe NA v. Queen Bee of Beverly Hills, LLC.,* 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.,* 327 F.Supp.3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also, *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S.Ct. 1017 (2021) (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products there.).

11.     The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." [4]

12.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

13.     Plaintiff, LASHAWN DAWSON, at all relevant times, is and was a resident of Bronx County, New York.

14.     Plaintiff is a blind, visually-impaired person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, and NYCHRL. Mr. Dawson cannot use a computer or device without the assistance of screen-reading software, such as JAWS and NVDA.

15.     Upon information and belief, Defendant is a California Limited Liability Corporation and provides to the public a Website known as https://www.3dayblinds.com, which provides consumers with access to an array of goods and services, including, but not limited to a wide variety of blinds, shades, shutters, and drapes in a range of colors, styles and sizes. According to Defendant's Website, "[P]urchasing window blinds used to be a drag since you had to measure all your windows, get price quotes from different companies, and go store-to-store checking out the few options that were available to you. It's easier than ever now with helpful online tools to make sure you order the perfect size for each

---

[4] *See* "Guidance on Web Accessibility and the ADA"

window, huge selections to choose from, fast price comparison between companies, and the ability for you to have all your blinds delivered straight to your door. You can install the blinds yourself or find a company that offers professional installation, so you don't even have to lift a finger." (see https://www.3dayblinds.com/FAQ) (last accessed September 17, 2023)

16.     Defendant's Website, and the goods, and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j). see *Andrews v. Blick Art Materials, LLC,* 268 F.Supp.3d 381 (E.D.N.Y. August 1, 2017) and *Romero v. 88 Acres Foods, Inc.,* 580 F.Supp.3d 9 (S.D.N.Y. Jan. 18, 2022).

## **STANDING**

17.     Plaintiff LASHAWN DAWSON is a blind, visually-impaired disabled person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL.

18.     As stated, Defendant is a California Limited Liability Corporation and provides to the public a highly interactive Website known as https://www.3dayblinds.com which provides consumers with access to an array of goods and services, including, but not limited to a wide variety of blinds, shades, shutters, and drapes in a range of colors, styles and sizes.

19.     Consumers such as the Plaintiff may sign up to create an Account which allows a user to browse through their array of products, find a designer, and "Book an

Appointment with a local Expert Design Consultant" via their Website https://www.3dayblinds.com which Defendant solely owns, operates, and controls.

20.    In addition to researching Defendant's products and services, consumers may also use Defendant's Website to sign up to "find an installer," learn about the "care and cleaning" of their products, and "child safety," receive product updates, wholesale inquiries, request price reductions, product news, and receive special promotions only available through their online platform. The only information omitted from the Website itself are the prices of available window treatments; this aspect will be revealed once the user "books an appointment" with 1 of their 250, 3 DAY BLINDS LLC "In-home Design Consultants" nearby the user's residence.

21.    Mr. Dawson was injured on July 26, 2023, initially when attempting to access Defendant's Website from Plaintiff's Bronx County residence to set up an account in order to update the existing window treatments within [his] home. Specifically, Plaintiff had been interested in controlling energy loss for financial efficiency; filtering some of the direct sunlight from the living room; and overall beautifying the entire home with various curtains and/or drapes that Defendant manufactures and installs. Because of energy loss, Mr. Dawson's electric bill trebled this year and based upon his impairment [he] is on a fixed-income. A trebled electric bill leaves no room for monetary extravagance; but while remediating the homes "envelope" with improved conduction and convection, it was Plaintiff's intent to bring an extra pattern of color and style by adding "Pinched Pleats" and "Draperies" to each of the windows therein.

22.    Plaintiff's online research had revealed Defendant's 70-year-old company and their solid reputation in the window treatment genre, thus on July 26, 2023, Mr.

Dawson attempted to access https://www.3dayblinds.com. It was Plaintiff's intent to have Defendant design the existing homes' window décor to meet [his] monetary reduction goal by utilizing "Full Coverage Drapery Panels" in the living room and "Room Darkening Lining" in the bedrooms, amongst other goals.

23. Plaintiff was unable to effectively access Defendant's Website however, due to the overall access barriers in place. On July 26, 2023, the Website indicated "Technical Problems" of an unknown origin(s) on the **Home-Page**; neither offering "Alt. Text" audibly explaining the accessibility issues, nor Contact Information which would allow Plaintiff an alternative route in which to discern the contents of the Website or the issues presented.

24. Moreover, Plaintiff encountered a section also on the Home Page that was unlabeled, and which required the use of a mouse to enter necessary information therein. A mouse is not useful to the sight impaired for navigating because it requires hand-eye coordination. Simply, Plaintiff is unable to utilize a mouse when navigating because he cannot discern where on a specific Web-Page the pointer is directed.

25. Additionally, on July 26., 2023, Plaintiff encountered many photographs of the products and accessories offered on https://www.3dayblinds.com that lack a text equivalent. The lack of Alt-Text on these graphics prevents screen readers from accurately vocalizing a description of what is being displayed. Thus, a sight-impaired consumer, even utilizing the best screen-reader available, is essentially "in the dark" as to those offered products. Moreover, upon information and belief, Defendant's company offered a payment option (Affirm) which allows a consumer to order now, pay in installments, and because of Plaintiff's fixed budget, this option would be ideal.

26.     Due to Defendant's failure however, to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of purchasing the desired window treatment that Plaintiff wanted to acquire from the Defendant. In addition, on August 1, 2023, Plaintiff returned to the Website in order to determine if Defendant had removed the access barriers, to no avail. Finally, on August 5, 2023, Plaintiff attempted to access https://www.3dayblinds.com for the final time and once again, those access barriers previously encountered, remained in place.

27.     Plaintiff LASHAWN DAWSON has been, and in absence of an injunction, will continue to be injured by Defendant's failure to provide the online content and services in a manner that is compatible with screen reader technology.

28.     Defendant's denial of full and equal access to and enjoyment of the good, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase the desired window treatments, amounts to a concrete and particularized injury, and is a direct result of Defendant's conduct.

29.     Despite this direct harm and frustration, Plaintiff nevertheless intends to access https://www.3dayblinds.com once the website is ameliorated in order to purchase the desired products and reduce his electricity bill and beautify his residence. Although these products and materials may be purchased elsewhere, Plaintiff's online research to date, including "Consumer Reports" indicates that Defendant's prices are comparatively lower than most other manufactures and retailers of window treatments. Moreover, it has been Plaintiff's experience that the payment option, Affirm is not regularly offered, and which Plaintiff had been previously approved and completed on that earlier occasion. The

plaintiff is unemployed and on a fixed budget. Thus, shopping for deals and bargains is a

regular and necessary pastime which Plaintiff takes full advantage of.

## <u>NATURE OF ACTION</u>

30.    The Internet has become a significant source of information, a portal, and a

tool for conducting business, doing everyday activities such as shopping, learning, banking,

researching, as well as many other activities for sighted, blind, and visually-impaired

persons alike.

31.    In today's tech-savvy world, blind and visually impaired people have the

ability to access websites using keyboards in conjunction with screen access software that

vocalizes the visual information found on a computer screen or displays the content on a

refreshable Braille display. This technology is known as screen-reading software. Screen-

reading software is currently the only method a blind or visually-impaired person may use

to independently access the internet. Unless websites are designed to be read by screen

reading software, blind, and visually-impaired persons are unable to fully access websites,

and the information, products, goods and contained thereon.

32.    Blind and visually-impaired users of Windows operating system-enabled

computers and devices have several screens reading software programs available to them.

Some of these programs are available for purchase and other programs are available

without the user having to purchase the program separately. Job Access With Speech,

otherwise known as "JAWS" is currently the most popular, separately purchased and

downloaded screen-reading software program available for a Windows computer. Another

popular screen-reading software program available for a Windows computer is Nonvisual

Desktop Access "NVDA".

33.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

34.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

35.    Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

    a.    A text equivalent for every non-text element is not provided;

    b.    Title frames with text are not provided for identification and navigation;

    c.    Equivalent text is not provided when using scripts;

    d.    Forms with the same information and functionality as for sighted persons are not provided;

    e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

    f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.     Web pages do not have titles that describe the topic or purpose;

i.     The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.     One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.     The default human language of each web page cannot be programmatically determined;

l.     When a component receives focus, it may initiate a change in context;

m.     Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.     Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.     In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.     Inaccessible Portable Document Format (PDF) ; and,

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

36.    Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STATEMENT OF FACTS

37.    Defendant is a company that owns and operates the Website https://www.3dayblinds.com offering features which should allow consumers to access the goods and services offered thereupon, and by which Defendant ensures the delivery of such goods throughout the United States, including New York State.

38.    Defendant's Website https://www.3dayblinds.com offers products and services for online sale and general delivery to the public. The Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about "Booking an Appointment", and avail consumers of the ability to choose a participating retailer nearby a user's residence. (see https://www.3dayblinds.com/book-now) (last accessed September 17, 2023)

-13-

39.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. The plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet often. Plaintiff had visited the Website on July 26, 2023, on August 1, 2023, and August 5, 2023, using a screen-reader.

40.     Plaintiff found https://www.3dayblinds.com  on the internet when searching for Websites that offered a wide variety window treatment. On July 17, 2023, Plaintiff discovered Defendant's Website and attempted to search what brands and styles of window treatments, including drapes, curtains and other accessories were offered online without success. Specifically, many of the photographs of the items offered online did not contain "Alt. Text", which would ideally audibly explain to the consumer details concerning the items or products displayed thereto. As a result, Plaintiff had been unable to discern what specific products the Defendant sold leaving Plaintiff confused and unsure as to the viability of this site.

41.     On August 1, 2023, Plaintiff again visited Defendant's website to determine whether the Website had been remedied in the interim and/or whether alternative features existed to allow Plaintiff the same or similar shopping experiences as that of a sighted individual. Despite Plaintiff's efforts however, due to the website's lack of a variety of features and accommodations, Plaintiff was effectively barred from having an unimpeded shopping experience.

42.     The Website contained access barriers that prevent free and full use by the Plaintiff using keyboards and screen reading software. These barriers include but are not limited to: missing alt-text, hidden elements on web pages, incorrectly formatted lists,

unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse.

43.    The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered. For example, upon coming across a link of interest, "Motorization and Home Automation," Plaintiff had been inexplicably redirected to an Error Page, entitled "404". However, the screen-reader failed to communicate that the link was broken and as a result, Plaintiff was confused and could not get back to the original search.

44.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do.

45.    Plaintiff emphatically intends to visit the Website in the near future if made accessible to complete the desired transaction in order to put into effect [his] plan to reduce his electricity bills and beautify his home. As stated, although the desired treatments may possibly be found elsewhere, Plaintiff intended to utilize https://www.3dayblinds.com because of their unbeatable pricing and general legitimacy.

46.    Defendant has denied Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and therefore to specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to the website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

47.    Due to the inaccessibility of Defendant's Website, blind and visually impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on the Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website.

48.    If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

49.    Through Plaintiff's attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

50.    Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff;

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

51.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

52.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

53.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and,

d.    Develop an accessibility policy that is clearly disclosed on Defendant's Websites, with contact information for users to report accessibility-related problems.

55.    Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

56.    Defendant has, according to information and belief, invested substantial sums in developing and maintaining the Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers.

57.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

**CLASS ACTION ALLEGATIONS**

58.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

59.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

60.    Common questions of law and fact exist amongst the Class, including:

a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL.

61.    Plaintiff's claims are typical of the Class. The Class, similarly, to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA or NYCHRL by failing to update or remove access barriers on the Website so either can be independently accessible to the Class.

62.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests

antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

63.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

64.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE ADA, 42 U.S.C. § 12182 *et seq.***

65.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

66.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

67.    Defendant's Website https://www.3dayblinds.com is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service

that is offered to the general public, and as such, must be equally accessible to all potential consumers.

68.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

69.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

70.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

71.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of

persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

72.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL

73.     Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

75.     Defendant's Website is a sales establishment and public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9).

76. Defendant is subject to NYCHRL because it owns and operates the Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

77. Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing the Website and the services integrated with such Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

78. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

79. Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a) in that Defendant has:

    a.    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

    c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

80.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

81.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

82.    Defendant's actions were and are in violation of the NYCHRL and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

83.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

84.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

85.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF

86.    Plaintiff, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

-24-

87.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

88.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.      A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York.

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law and City Law;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:   September 28, 2023

Respectfully Submitted,

**GABRIEL A. LEVY, P.C.**
Attorney for Plaintiff
1129 Northern Blvd, Ste 404
Manhasset, NY 11030
(347) 941-4715

**By:** /s/ Gabriel A. Levy, Esq.
**GABRIEL A. LEVY, ESQ (5488655)**
Glevy@glpcfirm.com